**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RANDY RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-4047 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DIVERSIFIED CONSULTANTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's motion for summary judgment [31] and Defendant's cross-motion for summary judgment [41]. For the reasons set forth below, Plaintiff's motion for summary judgment [31] is denied and Defendant's cross-motion for summary judgment [41] is granted. Judgement shall be entered against Plaintiff and in favor of Defendant. Civil case terminated.

## I.     Background

Plaintiff Randy Richardson, a former customer of Verizon [43 (Def.'s Stmt. of Facts), at ¶ 1], brings this action under the Fair Debt Collection Practices Act ("FDCPA") based on a letter sent to him regarding an alleged debt associated with his Verizon account. Plaintiff is a natural person who used the account associated with the alleged debt solely for personal purposes and did not use the account to buy goods for resale. [32 (Pl.'s Stmt. of Facts), at ¶ 6.] Defendant Diversified Consultants, Inc. ("Diversified") is a Florida corporation that maintains a registered agent in Illinois. [*Id.* at ¶ 2.] The alleged debt consisted of Plaintiff's unpaid expenses for goods and services used for personal, family, or household purposes owed to Verizon, which went unpaid

due to Plaintiff's financial difficulties. [*Id.* at ¶ 7.] The alleged debt was defaulted at the time Defendant was hired or retained for collection. [*Id.* at ¶ 9.]

Defendant contends that Plaintiff entered into an agreement titled "My Verizon Wireless Costumer Agreement" on December 6, 2013 (the "Agreement"). [43 (Def.'s Stmt. of Facts), at ¶ 1.] However, the Agreement does not include Plaintiff's name, account number, or signature. [46 (Pl.'s Resp. to Def.'s Stmt. of Facts), at ¶ 1.] Meryl Friedman, a senior paralegal at Verizon Corporation Resources Group LLC, submitted an affidavit averring that it is Verizon's policy to provide each subscriber a copy of the customer agreement prior to the initiation of service. [43-1 (Freidman Aff.), at ¶ 5.] According to the affidavit, the customer agreement associated with Plaintiff's account provided that one method by which a customer accepts the terms of the agreement is by activating his service. [*Id.*] Verizon's records indicate that Plaintiff activated his service on December 6, 2013. [*Id.* at ¶ 6.] Attached as an exhibit to the affidavit is a correspondence dated January 8, 2014 that was mailed to Plaintiff following the initiation of service for his account and that enclosed a copy of the Agreement. [*Id.*; 43-1 (Def.'s Ex. A-2), at 9-10.] The Agreement provides that if a customer "fail[s] to pay on time and Verizon Wireless refers [the] account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent." [43 (Def.'s Stmt. of Facts), at ¶ 7.]

Plaintiff failed to make all agreed payments to Verizon pursuant to the Agreement. [43 (Def.'s Stmt. of Facts), at ¶ 6.] Verizon placed Plaintiff's account with Defendant for collection on January 27, 2016 with a balance of $726.89. [43 (Def.'s Stmt. of Facts), at ¶ 8.] Pursuant to

the terms of the Agreement,[1] the $726.89 balance placed with Defendant included an 18% collection fee on the $616.01 principal balance, or $110.88.  [*Id*. at ¶ 9.]  This collection fee was immediately due at the time of the referral to Defendant and entailed no discretion by Defendant.  [*Id*.]  Defendant charges Verizon an 18% commission on collected accounts.  [*Id*. at ¶ 10.]  Defendant contends that the collection fee assessed to Plaintiff's account by Verizon was to reimburse it for this cost.  [*Id*.]  Verizon reported Plaintiff's account to the credit reporting agencies with an open balance of $616.01, which was the outstanding principal balance owed on the account at the time the account was assigned to collection.  [*Id*. at ¶ 11.]  Verizon does not include collection costs in its reporting of accounts.  [*Id*.]

On January 29, 2016, Defendant mailed a letter regarding Plaintiff's account to Plaintiff at 843 Staghorn Lane, Apartment 301, North Aurora, Illinois 60542-1443.  [*Id*. at ¶ 12.]  The letter provided Plaintiff's account number with Verizon, a "Principal Balance" of $616.01, "Collection Costs" of $110.88, and a "Current Balance" of $726.89.  [*Id*.]  Plaintiff resided at that address and received the letter.[2]  [*Id*.]  On May 27, 2016, Defendant mailed a second letter to Plaintiff (hereinafter, the "Letter") regarding the account at the same address.  [*Id*. at ¶ 13.]  The Letter provided a "Current Balance" of $726.89.  [*Id*.]

---

[1] The Court recognizes that Plaintiff disputes that the Agreement applied to his account.  The Court addresses the substance of that argument below.  However, whether the Agreement actually applied to Plaintiff's account represents a different question than whether the collection fee properly was calculated under the terms of the Agreement.  Because Plaintiff has not identified any other basis for disputing this fact, the Court deems it admitted.  The Court does the same for other facts disputed only on the ground that Defendant has not shown that the Agreement applied to Plaintiff's account.

[2] In his response to Defendant's Statement of the Facts, Plaintiff responds that this fact is undisputed but argues that Defendant fails to offer any "proof that Plaintiff actually received the confirmation letter and a copy of the Customer Agreement."  [46 (Pl.'s Resp. to Def.'s Stmt. of Facts), at ¶ 12.]  However, in so doing, Plaintiff cites to Plaintiff's deposition testimony indicating that he did not remember receiving an earlier letter.  In any event, the fact that Plaintiff does not remember receiving a letter does not establish that he did not receive the letter.

When asked what this lawsuit was about during his deposition, Plaintiff testified that it was about Defendant sending him a letter regarding a debt he already had paid. [43-3 (Pl.'s Dep. Tr.), at 6:22-8:14.] Plaintiff made similar statements throughout his deposition. [*Id*. at 34:9-19, 40:6-18, 41:18-23, 60:23-61:13, 88:3-7.] Plaintiff disputes Defendant's characterization of this testimony but fails to explain how Defendant's characterization is inaccurate. [46 (Pl.'s Resp. to Def.'s Stmt. of Facts), at ¶ 14.] Instead, Plaintiff cites to a portion of Plaintiff's deposition testimony in which Plaintiff testified that his receipt of the Letter caused him stress because he did not believe that he owed the money. [*Id*.]

## II.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). However, the Court will not draw inferences that are "supported by only speculation or conjecture," *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)) (internal citations omitted), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).[3]

---

[3] Generally, the Court deals with cross-motions for summary judgment one at a time, construing all facts and drawing all reasonable inference in favor of the non-moving party. *Black Earth Meat Mkt., LLC v. Vill.*

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014) (quoting *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)); see also *Anderson*, 477 U.S. at 250. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving

---

*of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016). Because the disputed issues in this case center on legal issues, the Court does not do so here. To the extent that inferences could be made, the Court has made inferences in favor of Plaintiff, whose claims nonetheless fail.

party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).

## III.  Analysis

### A.  Standing

Defendant argues that this case should be dismissed because Plaintiff lacks standing to pursue his claims.  Specifically, Defendant argues that Plaintiff fails to allege an injury-in-fact.  To establish Article III standing, "a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016).  In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation."  136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016).  The injury also must be particularized, meaning that it must "affect the plaintiff in a personal and individual way."  *Id*. (citation and internal quotation marks omitted).

Here, Defendant argues that Plaintiff has not established any concrete injury.  In support of that argument, Defendant cites to deposition testimony indicating that Plaintiff misunderstands the conduct challenged in this lawsuit.  Specifically, Plaintiff testified that this lawsuit is based on Defendant seeking to recover a debt that he already had paid.  [42, at 24-25 (collecting deposition testimony).]  Plaintiff raises two arguments in response.  First, Plaintiff argues that the FDCPA created new, private rights authorizing plaintiffs to sue based on the violation of the FDCPA alone.

Second, Plaintiff argues that even after *Spokeo*, Courts consistently have held that actual damages are not required to establish an FDCPA claim.

Although the Court agrees with Plaintiff's statement of the law with respect to the latter argument, *Gomez v. Portfolio Recovery Assocs., LLC*, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016), the argument misses the mark. Defendant does not argue that Plaintiff lacks standing because he fails to establish actual damages. Rather, Defendant argues that Plaintiff lacks standing because he cannot establish that he suffered *any* concrete harm as a result of Defendant's purported violations of the FDCPA.

The Court finds unpersuasive Plaintiff's argument that any violation of the FDCPA is enough to establish standing. The Court recognizes that "Congress is 'well positioned to identify intangible harms that meet minimum Article III requirements[.]'" *Bass v. I.C. Sys., Inc.*, 316 F. Supp. 3d 1047, 1050 (N.D. Ill. 2018) (quoting *Spokeo*, 136 S.Ct. at 1549). Still, as the Supreme Court explained in *Spokeo*, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1548. Thus, the Seventh Circuit has held that a plaintiff lacks standing when he has suffered "a statutory violation completely removed from any concrete harm or appreciable risk of harm." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017), cert. denied, 138 S. Ct. 740 (2018).[4]

---

[4] The Court recognizes that the Seventh Circuit actually concluded that the Plaintiff in *Groshek* lacked standing to bring a claim under the Fair Credit Reporting Act. The plaintiff in *Groshek* brought a claim under the FCRA based on a statutory requirement that a disclosure form be in a document that consists solely of the disclosure. *Groshek*, 865 F.3d at 886. The Seventh Circuit held that the plaintiff lacked standing because the FCRA did not seek to protect plaintiff "from the kind of harm he clam[ed] he suffered, *i.e.*, receipt of a non-compliant disclosure." *Id.* at 888. In other words, the statutory violation was one of form, not substance. In this case, on the other hand, "[t]he FDCPA undoubtedly provides consumers with

Indeed, in *Evans v. Portfolio Recovery Assocs., LLC*, the Seventh Circuit based its conclusion that plaintiffs in that FDCPA case had standing on the fact that the plaintiffs alleged "a risk of concrete harm." 889 F.3d 337, 346 (7th Cir. 2018). Specifically, the plaintiffs "pointed to the risk of financial harm as a result of credit reporting agencies lowering their credit score." *Id*. If all plaintiffs had to do was allege a violation of the FDCPA, then this standing analysis would not have been necessary. An abstract violation of the FDCPA alone is insufficient to establish standing. Plaintiff "cannot demonstrate standing simply by pointing to [Defendant's] procedural violation." *Casillas v. Madison Ave. Assocs., Inc.*, 2019 WL 2353211, at *2 (7th Cir. June 4, 2019). Rather, Plaintiff "must show that the violation harmed or 'presented an "appreciable risk of harm" to the underlying concrete interest that Congress sought to protect.'" *Id*. (quoting *Groshek*, 865 F.3d at 887).

That being said, the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. "Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" *Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017) (quoting *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016)). The Court recognizes that Plaintiff's deposition testimony indicates that Plaintiff found the Letter to be misleading because he believed he already had paid the debt, not because he was confused about the balance listed. Plaintiff's misunderstanding of this fundamental point in his case suggests that this case may be lawyer driven. As other courts have stressed, the use of consumer

---

a concrete interest in receiving accurate information about their debts." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 2017 WL 4164170, at *3 (N.D. Ill. Sept. 20, 2017).

protection statutes as tools to benefit lawyers—not consumers—raises concerns. See *Sulaiman v. Biehl & Biehl, Inc.*, 2016 WL 5720476, at *1 (N.D. Ill. Sept. 30, 2016) ("Cases brought to enforce consumer rights established by statutes such as the [FDCPA] are sometimes criticized as lawyer-driven vehicles that have more to do with efforts to obtain attorney's fees than they do with providing relief to the plaintiff-consumers." (collecting authorities)); see also *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 285-86 (S.D.N.Y. 2003) (recognizing that "the minimal recovery available to each plaintiff under the FDCPA creates legitimate concern regarding client control of the litigation"). Still, Plaintiff received the Letter that allegedly misrepresented the amount of the debt owed. This is an injury of the kind Congress sought to protect against through the FDCPA. *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Accordingly, Plaintiff has standing to pursue his claims. The Court therefore turns to the merits of Plaintiff's claims.

**B.      Fair Debt Collection Practices Act Claim**

Plaintiff brings a claim under the FDCPA based on Defendant's attempt to collect $110.89 in collection fees that Plaintiff contends Defendant was not entitled to collect by law. Specifically, Plaintiff argues that there was no agreement between Plaintiff and Verizon that authorized the collection of the fees charged. To state a claim under the FDCPA, Plaintiff must allege facts sufficient to establish that (1) Defendant qualifies as a debt collector as defined in the Act; (2) the actions complained of were taken in connection with the collection of any debt; and (3) Defendant's actions violated one or more substantive provisions of the FDCPA. *Gburek v.*

*Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Both parties have moved for summary judgment on Plaintiff's FDCPA claim.

### i. *Controlling Agreement*

Defendant argues that it did not violate the FDCPA because it had a contractual right to collect the fees charged. Plaintiff responds that the Defendant lacks proof that the Agreement identified by Defendant governed Plaintiff's account, noting that the Agreement does not include Plaintiff's name, account number, or signature. While the Agreement itself does not include information linking the Agreement to Plaintiff or his account, Defendant produced correspondence indicating that the Agreement was sent to Plaintiff following the initiation of service for his account. [43-1, at 9-10.] The correspondence references Plaintiff's name and his account number. [*Id*.] Plaintiff further argues that Defendant has not presented any evidence that Plaintiff received the correspondence and the copy of the Agreement. However, "absent evidence to the contrary, an individual is presumed to have received mail properly sent." *United States v. Miller*, 661 F. App'x 445, 448 (7th Cir. 2016) (citing *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004); *Bosiger v. U.S. Airways*, 510 F.3d 442, 452 (4th Cir. 2007)).

Plaintiff does not appear to dispute that he entered into an agreement with Defendant (as it is undisputed that Plaintiff failed to make all agreed payments to Verizon pursuant to the Agreement). [46 (Pl.'s Resp. to Def.'s Stmt. of Facts), at ¶ 6.] Still, without citation, Plaintiff argues that the "only agreement that can be proven to apply to Plaintiff's account would be an agreement containing such identifiers." [45, at 2.] The Court concludes that such a position is inconsistent with the realities of modern society, in which parties agree to general terms and

conditions. See, *e.g., Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034, 1036 (7th Cir. 2016) (discussing "newer forms of contracting").

Plaintiff argues that Defendant lacks proof that the Agreement it submitted to the Court governed Plaintiff's account. But, as discussed above, the fact that the Agreement was sent to Plaintiff after he initiated service for his account supports the conclusion that the Agreement governs. Furthermore, while Plaintiff submits that Defendant fails properly to authenticate the agreement, Plaintiff fails entirely to explain why the affidavit submitted by Ms. Friedman is insufficient for that purpose. Because Plaintiff has not adequately presented the argument, the argument is waived. "It is not the obligation of [the] court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Beard v. Whitley Cty. REMC*, 840 F.2d 405, 408-09 (7th Cir. 1988); see also *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." (citation omitted)).

In sum, Defendant has submitted evidence supporting the conclusion that the Agreement is the governing document. Absent evidence to the contrary, there is no issue of material fact and the Court concludes that the Agreement governs. *Burrell v. City of Mattoon*, 378 F.3d 642, 646 (7th Cir. 2004) ("[W]here the party seeking summary judgment has supported its recitation of facts with citations to depositions and other record materials, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks and citations omitted)).

### ii.    *Penalty Clause*

Plaintiff argues that even if the Court concludes the Agreement applies in this case, Defendant nonetheless is liable under the FDCPA because the provision in the Agreement authorizing the collections fees was an improper penalty clause.[5]  "In interpreting contract provisions that specify damages, Illinois law draws a distinction between liquidated damages, which are enforceable, and penalties, which are not." *Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 561-62 (7th Cir. 2001) (citing *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289 (7th Cir. 1985)).  "[W]hen the sole purpose of the clause is to secure performance of the contract, the provision is an unenforceable penalty." *Id*. at 562 (citing *Am. Nat'l Bank & Trust Co. of Chi. v. Reg'l Transp. Auth.*, 125 F.3d 420, 440 (7th Cir. 1997)).  "A clause is a liquidated damages provision if: (1) the actual damages from a breach are difficult to measure at the time the contract was made; and (2) the specified amount of damages is reasonable in light of the anticipated or actual loss caused by the breach." *Id*. (citations omitted).  "If the amount of damages is invariant to the gravity of the breach, the clause is probably not a reasonable attempt to estimate actual damages and thus is likely a penalty."  *Id*. (citations omitted).  "Whether a provision is a penalty clause is an issue of law[.]"  *Id*. (citing *American Nat'l Bank & Trust*, 125 F.3d at 439.).

The Agreement provides that if Plaintiff "fail[s] to pay on time and Verizon Wireless refers your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party.  The fee will be calculated at the maximum percentage

---

[5] The Court notes that Plaintiff actually argues that the relevant provision is an improper liquidated damages clause.  However, as discussed below, liquidated damages clauses are permitted under Illinois law while penalty clauses are not.

permitted by applicable law, not to exceed 18 percent." [43 (Def.'s Stmt. of Facts), at ¶ 7.] Plaintiff argues that this provision amounts to an improper penalty clause because the percentage-based collection fee is merely a penalty designed (1) to punish Plaintiff's non-performance, or (2) to be used as a threat to secure Plaintiff's performance. [35, at 16-17.] Given that Defendant charges Verizon an eighteen percent commission on collected accounts [43 (Def.'s Stmt. of Facts), at ¶ 10], even drawing all reasonable inferences in favor of Plaintiff, the Court sees no basis for concluding that the percentage-based collection fee served such improper purposes.

Curiously, Plaintiff asserts that "it would be impossible for Verizon to charge Plaintiff a reasonable estimate of the cost of Defendant's collection efforts at a time when Defendant had not even begun attempting to collect the alleged debt from Plaintiff" because "Defendant does not get paid for its collection efforts unless and until it recovers a payment from a consumer." [35, at 17.] This assertion actually supports Defendant's position that the provision at issue is not an improper penalty clause because it supports the conclusion that the actual damages from a breach were difficult to measure at the time the contract was made. Furthermore, Plaintiff does not offer any argument as to why the provision is not reasonable in light of the anticipated or actual loss caused by the breach.

Although Illinois courts have concluded that liquidated damages provisions "must be for a specific amount for a specific breach," *Med+Plus Neck & Back Pain Ctr., S.C. v. Noffsinger*, 726 N.E.2d 687, 693 (Ill. App. Ct. 2000), Illinois courts have held that this standard is satisfied by percentage-based liquidated damages provisions. See, *e.g., Jameson Realty Grp. v. Kostiner*, 813 N.E.2d 1124, 1132 (Ill. App. Ct. 2004). The Court therefore concludes that the relevant provision is not an improper penalty clause.

### iii.     Otherwise Not Authorized by the Agreement

Plaintiff further argues that the Agreement does not bar his FDCPA claim because Defendant's imposition of percentage-based collection fees did not bear any relation to the actual costs of collection.  According to Plaintiff, "it is a violation of § 1692e and § 1692f of the FDCPA to add a collection fee to a consumer's debt where that fee is merely based on a percentage of the remaining obligation rather than on the actual costs of collection, especially where the consumer only agreed to pay the actual costs of collection and/or the actual collection agency fees[.]"  [35 (Pl.'s Br.), at 15.]  However, the Agreement expressly permits the imposition of percentage-based collection fees.  Specifically, the Agreement provides that "a collection fee [would] be assessed and [would] be due at the time of the referral to the third party" if Plaintiff failed to pay on time and Verizon referred his account "to a third party for collection."  [43 (Def.'s Stmt. of Facts), at ¶ 7.]  Pursuant to the Agreement, the fee would "be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent."  [*Id.*]

Although Plaintiff argues that such percentage-based collection fees are improper, courts have only so held when the collection fees were not expressly authorized by the controlling agreement.  See, *e.g., Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008) ("Neither a law expressly permitting a collection fee on behalf of a person in the position of a seller of cellular telephone services nor an agreement between the class members and their cellular providers exists here."); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609 (11th Cir. 2014) (contractual agreement did not require plaintiff "to pay a collection agency's percentage-based fee where that fee did not correlate to the costs of collection").  Furthermore, Defendant actually did earn an eighteen percent commission on amounts collected as Defendant charges Verizon an eighteen percent commission on collected accounts.  [43 (Def.'s Stmt. of Facts), at ¶ 10.]  Because the

collection fees in this case were authorized by the Agreement, the imposition of percentage-based collection fees does not violate the FDCPA.

### iv.    Otherwise Misleading

Plaintiff argues that—even if the collection fee was authorized—Plaintiff still has a claim under the FDCPA because Defendant misrepresented the character of the debt by failing clearly to indicate that the balance listed included both the original obligation and the collection fee. Defendant argues that Plaintiff waived this argument by raising it in his reply brief.  Although Plaintiff raised the argument in his reply in support of his motion for summary judgment, that brief also was Plaintiff's response to Defendant's motion for summary judgment.  Defendant therefore still had an opportunity to respond to the argument.  Under these circumstances, the Court normally would find that Plaintiff did not waive the argument simply because Plaintiff failed to raise it in his opening brief.  *CHC Cobrasource, Inc. v. Mangrove Cobrasource, Inc.*, 2012 WL 1952930, at *1 (N.D. Ill. May 30, 2012) ("Although a party generally waives an argument that it raises for the first time on reply, [plaintiff] did not do so here because Defendants had an opportunity to respond to the argument.").  However, Defendant does not argue that the Court should find waiver simply because the issue was raised in Plaintiff's reply/response brief.  Defendant argues that Plaintiff waived the argument by waiting to raise it at all in this litigation until the summary judgment stage.

A party cannot advance a new legal theory for the first time in response to a summary judgment motion. *Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012) (collecting cases); see also *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011) (affirming decision granting summary judgment in defendant's favor on theory of retaliation first raised by plaintiff in response to summary judgment).  Although the complaint references the balance identified on the challenged letter, the complaint also indicates that Plaintiff's FDCPA claim is based on the theory

that the balance identified improperly was inflated. There is no indication in the complaint that Plaintiff is proceeding on the theory that the balance should have been broken down. Plaintiff may not amend his complaint through arguments raised in opposition to a motion for summary judgment. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). The Court therefore grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment on Plaintiff's FDCPA claim.

### C.    ICAA Claim

Plaintiff does not move for summary judgment on his claim under the Illinois Collection Agency Act ("ICAA"). Defendant, on the other hand, does move for summary judgment on Plaintiff's ICAA claim, arguing that there is no private cause of action under that statute. Plaintiff failed to respond to the argument and therefore has waived any response. *Hassebrock v. Bernhoft*, 815 F.3d 334, 342 (7th Cir. 2016). In any event, Defendant's argument for dismissing Plaintiff's ICAA claim is supported by caselaw. *Johnson v. Alltran Educ., LP*, 2018 WL 2096374, at *10 (N.D. Ill. May 7, 2018) (collecting cases). The Court therefore grants summary judgment in favor of Defendant on Plaintiff's ICAA claim.

## IV.    Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment [31] is denied and Defendant's cross-motion for summary judgment [41] is granted. Judgement shall be entered against Plaintiff and in favor of Defendant. Civil case terminated.

Dated: July 17, 2019

_____
Robert M. Dow, Jr.
United States District Judge

16